**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

OVERHEAD DOOR CORPORATION,   :
                            :
         Plaintiff,         :
                            :
v.                          :            Case No. 1:12-cv-101 (WLS)
                            :
WILLIAM H. BURGER, d/b/a    :
ALBANY DOOR AND HARDWARE,   :
                            :
         Defendant.         :
_____ :

## ORDER

Before the Court is Plaintiff Overhead Door Corporation's Motion for Default Judgment. For the reasons that follow, the Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## PROCEDURAL POSTURE

This is a Lanham Act case against William H. Burger ("Burger"), doing business as Albany Door and Hardware, for damages and injunctive relief.  Plaintiff Overhead Door Corporation ("Overhead Door") claims that Burger is using its federally registered mark, "OVERHEAD DOOR," without permission, and is engaging in false advertising and cyberpiracy, in violation of 15 U.S.C. §§ 1114, 1125(a), 1125(d) and O.C.G.A. §§ 10-1372, 10-1-421. Overhead Door also brings a claim of breach of contract and requests damages in the amount of $10,155.39 on an open account.

Overhead Door filed a complaint on June 28, 2012. (Doc. 1.) After Burger failed to answer (*see* Docket), the plaintiff applied for an entry of default. The Clerk of the Court entered a default. Overhead Door then timely moved for a motion for default judgment (Doc. 10.) On December 17, 2012, the Court held a hearing on the motion.

Overhead Door, through counsel, appeared for the hearing; Burger did not. Plaintiff's counsel represented to the Court that Burger had been personally served. Overhead Door also declined to present evidence on Lanham Act damages. The Court then granted a default judgment against Burger and explained it would specify the scope of the default judgment in a subsequent order.

## FACTUAL FINDINGS

The Court makes the following findings of fact from the allegations and exhibits in Overhead Door's complaint.[1]

Overhead Door owns a registered trademark listed as OVERHEAD DOOR, U.S. Registration No. 74201580. The trademark consists of the name "Overhead Door," in capital letters, stretched across a banner. Overhead Door registered that trademark in 1994 and has periodically renewed the registration.

Burger began using the Overhead Door trademark through a lawful franchise agreement. On March 23, 1982, DMC Inc., then a Georgia Domestic Corporation in Albany, Georgia, filed an application to operate an Overhead Door franchise. On April 5, 1982, Overhead Door entered a Distributor's Agreement with DMC, granting it the right to distribute Overhead products under the name "Overhead Door Company of Albany." Later that month, on April 29, 1982, Burger, Hazel Burger, Donald C. Miller, and Constance Miller executed an UNLIMTED GUARANTY-JOINT AND SEVERAL in favor of Overhead Door.

On August 18, 1987, Overhead Door and Burger executed an amendment to the DCM Distributor's Agreement, modifying the agreement to show Burger as the sole

---

[1] By operation of a default judgment, Burger admits Overhead's well-pleaded allegations of fact. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

owner and sponsor of Overhead Door Company of Albany. On May 13, 1988, the Georgia Secretary of State administratively dissolved DMC. Burger and Overhead Door executed a second amendment to the Distributor's Agreement on November 11, 2009.

The Distributor's Agreement provided, in relevant part, that "[t]his Agreement and all such rights and obligation may . . . be terminated by either party hereto at any time for any reason by giving of 60 days' written notice of such termination to the other party." Furthermore, the "Standard Provisions" of the Distributor's Agreement required Burger, upon termination of the Agreement, to return all materials bearing Overhead Door's mark; to discontinue the use of the name "Overhead Door" and "Overhead"; to deliver installation records of Overhead Door's products to Overhead; and to advise local telephone companies that the number used in connection with Overhead Door Company of Albany were to be retained by Overhead Door for future use.

On December 1, 2011, Overhead Door sent a written 60-day notice to Burger advising him the company opted to terminate the Distributor's Agreement. The notice requested that Burger comply with the "Standard Provisions" of their agreement. It specifically asked him to discontinue using the name "Overhead" and "Overhead Door," to advise the telephone company to transfer Overhead Door Company of Albany's numbers to Overhead Door, and to return all confidential data to Overhead Door's corporate office.

Burger now operates a company called Albany Door and Hardware, which services Overhead Door installations that Burger made before the termination of the Distributor's Agreement. He also uses the Internet domain name "overheaddoorcoofalbanyga.com" and the e-mail address "ohalbany@aol.com." Burger also continues use of the same telephone number and addresses listed in the

Distributor's Agreement. According to a cease and desist letter attached to the Complaint, Burger used a work order bearing the name "Overhead Door Company of Albany" and the Overhead Door Mark and listed his phone number under the name Overhead Door Company of Albany in the 2012 Yellow Pages. Overhead Door claims Burger is purposely diverting its customers to Albany Door and Hardware.

## DISCUSSION

### I.   Standards

"The entry of a default judgment is appropriate '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise.'" *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). Before obtaining a default judgment, the party seeking such a judgment must first seek an entry of default from the Clerk of the Court. Fed. R. Civ. P. 55(a). But the entry of a default does not entitle a plaintiff to a default judgment. *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] The defaulting party admits the movant's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu*, 515 F.2d at 1206); *Buchanan*, 820 F.2d at 361. Those well-pleaded factual allegations must provide a sufficient basis for imposing liability on the defaulting party. *Tyco Fire & Security, LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In considering a default judgment, the Court must address (1) jurisdiction, (2) liability, and

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(3) damages. *Johnson v. Rammage*, No. 5:06-cv-057 (CAR), 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007).

The Court finds Overhead Door is entitled to a default judgment on several of its claims. Overhead Door has complied with Federal Rule 55. It requested an entry of default from the Clerk of the Court, and then timely moved for an entry of default judgment. The Court has jurisdiction over Overhead Door's Lanham Act claims through federal question jurisdiction, 28 U.S.C. § 1331, and over its state-law claims by way of supplemental jurisdiction, § 1367.

The Court turns now to Burger's liability on Overhead Door's causes of action.

## II.   **The Lanham Act**

Overhead alleges Burger violated various provisions of the Lanham Act, 18 U.S.C. § 1051 *et seq*. The Court finds that Burger is liable for trademark infringement and false designation, but not false advertising and cyberpiracy.

### A. **Trademark Infringement.**

The Lanham Act's provision on trademark infringement prohibits

> "[a]ny person . . . without the consent of the registrant . . . [from] us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ."

15 U.S.C. § 1114(1)(a). To prevail on a trademark-infringement claim under the Lanham Act, the plaintiff must show (1) that it possesses a valid mark, (2) that the defendant used the mark, (3) that the defendant's use of the mark occurred "in commerce," (4) that the defendant used the mark "in connection with the sale . . . or advertising of any goods," and (5) that the defendant used the mark in a manner likely to confuse

consumers. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). A person may infringe on a trademark through the registration and use of a domain name. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1200–01 (11th Cir. 2001).

The Eleventh Circuit has identified seven factors to determine whether an infringer's use of a trademark is likely to confuse customers: (1) the strength of the mark alleged to have been infringed; (2) the similarity of the infringed and infringing marks; (3) the similarity of goods and services offered under the marks; (4) the similarity of the actual sales methods used by the holders of the marks; (5) similarity of advertising methods; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence of actual confusion among the public. *Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010).

As a threshold matter, the Court must determine whether Burger's use of the Overhead Door trademark was unauthorized. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983). A franchisor may show that a former franchisee's use of a mark is unauthorized by showing it validly terminated the franchise agreement. *Robertson*, 147 F.3d at 1308. The Court easily concludes Overhead Door validly terminated the Distributor's Agreement. The Distributor's Agreement permitted either party to terminate the relationship "at any time for any reason by the giving of 60 days' written notice of such termination to the other party." (Doc. 1-13.) Overhead Door exercised that provision and provided sixty days' notice to Burger before terminating the agreement. Nothing in the record suggests the termination was invalid or unlawful.

Given that Burger's use of the Overhead Door trademark was unauthorized, the Court also finds the well-pleaded factual allegations in the complaint establish that Burger is liable under the Lanham Act for trademark infringement. It is clear from the complaint and its incorporated exhibits that Overhead Door possesses a valid trademark registered with the U.S. Patent and Trademark Office. Registered marks are presumptively valid. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–85 (5th Cir. 1980); *TracFone Wireless, Inc. v. Park China Group Co. Ltd.*, 843 F. Supp. 1284, 1294 (S.D. Fla. 2012). After the termination of the Distributor's Agreement, Burger used that trademark, without permission, in his website domain name, e-mail address, work orders, and in the Yellow Pages. By holding himself out as an Overhead Door franchisee, Burger profited from Overhead's goodwill and reputation through sales and repairs. These sales and advertisements occurred "in commerce" because he operated a website and apparently sold garage and commercial doors under Overhead Door's banner. *See Axiom* 522 F.3d at 1218–19 (Internet sales).

Additionally, the complaint's factual allegations show that the infringing use was likely to cause confusion among customers. "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademark." *Mason*, 710 F.2d at 1492. Burger used a domain name and e-mail address that implicitly identified him as an Overhead Door franchisee, and he continued to service Overhead Door products he had sold as a franchisee. When Burger serviced the products, he used service forms with Overhead Door's actual trademark. Therefore, the marks each company used were similar, if not identical, and both Burger and Overhead Door sold garage-type doors. Although the Court has little information about the similarity of the sales methods, advertising,

Burger's intent, or actual customer confusion, Burger's effective continuation of an unauthorized franchise is strong indication of a likelihood of customer confusion.

The Court therefore finds that Burger is liable for trademark infringement under the Lanham Act. Overhead Door's motion for default judgment on this claim is **GRANTED**.

### B. <u>False Designation</u>

Overhead Door also makes a claim of false designation under the Lanham Act. A false-designation claim requires the plaintiff to show that (1) "it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that customers were likely to confuse the two." *Suntree Techs.*, *Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012) (quoting *Tana*, 611 F.3d at 773). Because a claim of false designation, under 15 U.S.C. § 1125, is broader than a claim of trademark infringement, the facts sufficient to establish the latter also establish former. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). Having found that Burger is liable for trademark infringement, the Court also finds he is liable for false designation. The Court **GRANTS** the motion for default judgment on this claim.

### C. <u>False Advertising</u>

Overhead Door claims Burger also violated the Lanham Act's prohibition on false advertising. According to Overhead, Burger's promotion of products through www.overheaddoorcoofalbanyga.com amounted to false advertising because it implied a relationship between him and Overhead Door. The Court disagrees.

Section 43(a) of the Lanham Act prohibits any person, "in commercial advertising or promotion, [from] misrepresent[ing] the nature, characteristics, qualities,

or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To establish a false-advertising claim under the Lanham Act, a plaintiff must show that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, customers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising. *Axiom*, 522 F.3d at 1224; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

Under the first element of a false-advertising claim, a statement is false or misleading when (1) it is literally false as a factual matter or (2) literally true or ambiguous but likely to mislead or deceive customers. *Hickson*, 357 F.3d at 1261. Whether a statement is literally false or misleading affects the plaintiff's burden. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1318–19 (11th Cir. 2010). If a court deems a statement literally false, the plaintiff need not prove the element of deception. *Id.* at 1319. On the other hand, when a statement is literally true or ambiguous but misleading, the plaintiff must introduce some evidence of consumer reaction. *Id.*; *1-800 Contacts*, 299 F.3d at 1247 n.3 (noting a split in the Courts of Appeals as to what type of evidence a plaintiff must produce for consumer deception but that "[e]ven in circuits with the lower standard, the movant must produce some evidence of consumer reaction").

In this case, the plaintiff has not identified any literally false statements on Burger's website in its well-pleaded factual allegations or otherwise. It merely alleges Burger's use of the domain name overheaddoorcoofalbanyga.com "reasonably implies

that Defendant Burger's products or services are those of [Overhead Door's]." But Overhead Door has not alleged that Burger literally claimed an affiliation or that its products were those of Overhead's. An independent review of the record fails to reveal any literally false statements in Burger's website.

If Burger's advertisements were not literally false, Overhead Door must show they were literally true or ambiguous but misleading. *Hickson*, 357 F.3d at 1261. The Court can assume, without deciding, that Burger's advertisements were misleading. Overhead has not alleged or provided evidence of consumer deception.

Therefore, Overhead Door's motion for a default judgment as to the false-advertising claim is **DENIED**.

### D. <u>Cyberpiracy</u>

The Antiscybersquatting Consumer Protection Act (ACPA), codified at 15 U.S.C. § 1125(d), creates liability for any person who uses another's trademark with "a bad faith intent to profit from that mark" and who "registers, traffics in, or uses a domain name" that is identical or confusingly similar to that mark. 15 U.S.C. § 1125(d). Overhead Door claims Burger engaged in cybersquatting by using the domain name www.overheaddoorofalbanyga.com. Even accepting Overhead Door's well-pleaded factual allegations as true, the Court finds Overhead Door has not established a claim under 15 U.S.C. § 1125(d). It has not provided allegations of fact establishing that Burger had bad faith intent to profit from the use of the mark.

Congress passed the ACPA in 1999 "in response to concerns over the proliferation of cybersquatting—the Internet version of a land grab." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001). According to the Senate Report, examples of people who act with "bad faith intent to profit" are those who

> (1)"register well-known brand names as Internet domain names in order *to extract payment* from the rightful owners of the marks;" (2) "register well-known marks as domain names and warehouse those marks *with the hope of selling them* to the highest bidder;" (3) "register well-known marks to *prey on* consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site;" (4) "target distinctive marks *to defraud consumers*, including to engage in counterfeiting activities."

*Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (quoting *Lucas Nursery & Landscaping v. Grosse*, 359 F.3d 806, 810 (6th Cir.2004) (quoting S. Rep. No. 106–140 (1999)).

To identify individuals who act with "bad faith intent to profit," the ACPA provides non-exhaustive list of factors a Court may consider. § 1125(d)(1)(i). Among those factors is whether the user previously used "the domain name in connection with the bona fide offering of any goods or services." § 1125(d)(1)(i)(III). Although no particular factor is dispositive under the ACPA, *Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1223 (11th Cir. 2012), Burger's prior lawful use of his domain name as an Overhead Door franchisee is strong evidence that undercuts a finding a cybersquatting. Furthermore, given that Overhead has not identified any other indicia of bad faith, beyond Burger's continued use of the website, the Court finds there are insufficient facts to establish a cybersquatting violation.

The motion for default judgment on cyberpiracy is **DENIED**.

### III.   Uniform Deceptive Trade Practices Act and False Advertising under Georgia law.

The Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372 *et seq.*, provides a cause of action against a person who, in the course of business, "[c]auses likelihood of confusion or of misunderstanding" as to the source, sponsorship, approval, or affiliation of goods or services. § 10-1-372(a)(2)–(3). Generally speaking, a claim

under the Georgia Deceptive Practices Act is "co-extensive" with a Lanham Act claim. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 n.11 (11th Cir. 2007); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir. 1980) ("Infringement of a registered mark is governed by the provisions of 15 U.S.C. § 1114 [ ], which imposes liability against use likely to cause confusion, or to cause mistake, or to deceive. The same test is applicable to the [Georgia] deceptive trade practices claim and common law unfair competition." (citations and alterations omitted)). Similarly, the Georgia False Advertising statute involves "essentially the same test" as the Lanham Act. *Gold Kist Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1303 (N.D. Ga. 1989).

Given that the Court has found Burger's use of Overhead Door's trademark is likely to cause confusion under the Lanham Act, the Court also finds his conduct violates the Deceptive Practices Act. The Court finds, consistent with its finding on federal false advertising, that Burger is not liable for violating the Georgia False Advertising Act.

### IV.    Breach of Contract

Overhead Door also alleges a breach of contract claim for Burger's failure to comply with the Standard Provisions of the Distributor's Agreement. Overhead requests the Court remedy this breach by requiring specific performance. But it has not briefed this issue in its motion for default judgment or provided any citation to Georgia law. For the Court to require specific performance, it would have to find that any legal remedy is inadequate to compensate the movant. *Hampton Island, LLC v. HAOP, LLC*, 702 S.E.2d 770, 776 (Ga. Ct. App. 2010). But a "district court judge is neither required nor permitted to become counsel for any party." *Baker v. Norman*, 651 F.2d 1107, 1129 n.26 (5th Cir. 1981). *See also Ultimate Resort Holdings, LLC v. Ultimate Resort Network,*

*LLC*, No. CV408-070, 2009 WL 2032036, at *4 (S.D. Ga. Jul. 8, 2009) (declining to enter default judgment for breach of contract because plaintiff in Lanham Act case had not briefed it). The Court declines to speculate—without the aid of either party–about the uniqueness of Overhead Door's phone numbers and technical data and whether a legal remedy is adequate to compensate the nonbreaching party.

A motion for default judgment on this claim is **DENIED**.

### V.   <u>Open Account</u>

In an action on open account, Overhead requests $10,155.39 in damages arising from Burger's failure to pay for the purchase of certain goods. "A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and 'where it appears that the plaintiff has fully performed [its] part of the agreement and nothing remains to be done except for the other party to make payment.'" *Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C.*, 730 S.E.2d 12, 14 (Ga. Ct. App. 2012) (quoting *Five Star Steel Const., Inc. v. Klockner Namasco Corp.*, 524 S.E.2d 783, 739–40 (Ga. Ct. App. 1999)).

Overhead is entitled to $10,155.39 in damages on its open account. Overhead has alleged that Burger purchased products and that $10,155.39 remains outstanding from that purchase. There is no dispute about the performance or terms of the contract. Furthermore, as Overhead alleged a sum certain, the Court has authority to award those damages upon the entry of a default judgment. *See* Fed. R. Civ. P. 55(b)(1). The motion for default judgment on open account is **GRANTED**.

### VI.   <u>Injunctive Relief</u>

The Court finds that Overhead Door is entitled to a permanent injunction on its trademark infringement and false designation claims. The Lanham Act permits a court

to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. A plaintiff seeking a permanent injunction must establish (1) it has suffered an irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 5222 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Overhead Door, through its well-pleaded factual allegations, has established these elements. Although there is probably no presumption of irreparable harm in a Lanham Act case, *Axiom*, 522 F.3d at 1228, trademark infringement often implicates injuries of that caliber, *see Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989). Irreparable injury "include[s] loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of injury." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). Because Burger represents himself as an Overhead Door affiliate, Overhead Door has lost control of its reputation and goodwill. Burger's customers may very well assume he continues to operate as an Overhead Door franchisee. Furthermore, Burger has failed to defend this lawsuit and Overhead alleges he continues to use its trademark in defiance of the termination of their agreement and a cease and desist letter.

The well-pleaded factual allegations evince that legal remedies are inadequate to redress Burger's continued infringement. As already mentioned, the infringement

deprived Overhead Door of control over its reputation and goodwill. This type of harm is ongoing, impossible to quantify, and causes long-term damage.

The balance of hardships and the public interest also favor a permanent injunction. Although Burger may suffer business losses if it cannot continue to use its website, e-mail address, and Overhead Door work orders, these harms are easily remedied. Furthermore, an injunction will not prevent Burger from selling commercial and residential doors. Overhead Door's reputation in the Albany area, on the other hand, may be damaged by Burger's business. Finally, the public benefits from eliminating any confusion about Burger's affiliation or sponsorship.

Overhead Door's request for a permanent injunction is **GRANTED**.

## **CONCLUSION**

For the foregoing reasons, Overhead Door's Motion for Default Judgment is **GRANTED in part** and **DENIED in part,** as follows: The Court enters a default judgment on Overhead Door's trademark infringement, false designation, Georgia Deceptive Trade Practices Act, and open account claims. The motion is **DENIED** as to the false advertising under Georgia and federal law and cyberpiracy. The Court **DENIES without prejudice** Defendant's motion for default judgment on breach of contract.

**IT IS HEREBY ORDERED AND ADJUDGED** that judgment be entered in favor of Plaintiff Overhead Door Corporation and against Defendant William H. Burger, d/b/a Albany Door and Hardware, in the principal amount of **$10,155.39**; together with interest at the rate consistent with 28 U.S.C. § 1961(a), accruing on the principal beginning on the date of Judgment.

Burger is hereby **ENJOINED** and **RESTRAINED**, together with any officers, directors, principals, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith (referred to hereinafter as "Burger") having notice of this Order, as follows:

(1) Burger shall cease any and all use of the trademark OVERHEAD DOOR, or any other variation thereof that are colorable imitations of, or confusingly similar to the Overhead Door's Mark;

(2) Burger shall refrain from representing by words or conduct that any goods or services which are promoted, offered for sale, or sold by Burger are authorized, sponsored by, endorsed by, or otherwise connected with Overhead Door or Overhead Door's Mark;

(3) Burger shall, within **seven (7) days** of the entry of this Order, cancel, change, or transfer the domain name www.overheaddoorofalbanyga.com to Overhead Door;

(4) Burger shall, within **seven (7) days** of the entry of this Order, cancel, change, or transfer the e-mail address ohdalbany@aol.com to Overhead Door; and

(5) Burger shall, within **seven (7) days** of the entry of this Order, notify all phone directory companies, such as the Yellow Pages, that it no longer operates under the name Overhead Door Company of Albany.

**SO ORDERED**, this  _17th_  day of June 2013.


 _/s/ W. Louis Sands_
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**