IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| OVERHEAD DOOR CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-cv-101 (WLS) |
| | : | |
| WILLIAM H. BURGER, d/b/a | : | |
| ALBANY DOOR AND HARWARE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Plaintiff Overhead Door Corporation's Motion for Summary Judgment. For the reasons that follow, the motion is **GRANTED**.

## PROCEDURAL POSTURE

This is a trademark infringement and breach of contract case against William H. Burger ("Burger"), doing business as Albany Door and Hardware, for damages and injunctive relief. Plaintiff Overhead Door Corporation ("Overhead Door") claims that Burger is using its federally registered mark, "OVERHEAD DOOR," without permission, and is engaging in false advertising and cyberpiracy, in violation of 15 U.S.C. §§ 1114, 1125(a), 1125(d) and O.C.G.A. §§ 10-1372, 10-1-421. Overhead Door also brings a claim of breach of contract and requests damages in the amount of $10,155.39 on an open account.

Overhead Door filed a complaint on June 28, 2012. (Doc. 1.) After Burger failed to answer (see Docket), the plaintiff applied for an entry of default. The Clerk of the Court entered a default. Overhead Door then timely moved for a motion for default judgment (Doc. 10.) On December 17, 2012, the Court held a hearing on the motion. Overhead Door, through counsel, appeared for the hearing; Burger did not. Plaintiff's counsel represented to the Court that Burger had been personally served. Overhead Door

1

declined to present evidence on Lanham Act damages. The Court then granted a default judgment against Burger and explained it would specify the scope of the default judgment in a subsequent order.

On June 17, 2013, the Court granted in part and denied in part Overhead Door's Motion for Default Judgment. In its Order, the Court granted a default judgment on Overhead Door's trademark infringement, false designation, Georgia Deceptive Practices Act, and open account claims. The Court denied without prejudice Overhead Door's breach of contract claim, finding that Overhead Door had failed to show or brief how its contract entitled it to specific performance.

Following entry of that Order, Overhead Door moved for partial summary judgment on the breach of contract claim. In its motion, Overhead Door requests specific performance of the contract—namely, to require Burger to release the telephone numbers formerly associated with Overhead Door. The Court noticed Burger of his obligations to survive a motion for summary judgment. He did not respond to the motion. The Court grants it.

**STATEMENT OF FACTS**

The Court makes the following findings of fact from the allegations and exhibits in Overhead Door's complaint, which Burger admitted by default, and the record in this case.

Overhead Door owns a registered trademark listed as OVERHEAD DOOR, U.S. Registration No. 74201580. The trademark consists of the name "Overhead Door," in capital letters, stretched across a banner. Overhead Door registered that trademark in 1994 and has periodically renewed the registration.

Burger began using the Overhead Door trademark through a lawful franchise agreement. On March 23, 1982, DMC Inc., then a Georgia Domestic Corporation in Albany, Georgia, filed an application to operate an Overhead Door franchise. On April 5, 1982, Overhead Door entered a Distributor's Agreement with DMC, granting it the right to distribute Overhead products under the name "Overhead Door Company of Albany."

2

Later that month, on April 29, 1982, Burger, Hazel Burger, Donald C. Miller, and Constance Miller executed an UNLIMTED GUARANTY-JOINT AND SEVERAL in favor of Overhead Door.

On August 18, 1987, Overhead Door and Burger executed an amendment to the DCM Distributor's Agreement, modifying the agreement to show Burger as the sole owner and sponsor of Overhead Door Company of Albany. On May 13, 1988, the Georgia Secretary of State administratively dissolved DMC. Burger and Overhead Door executed a second amendment to the Distributor's Agreement on November 11, 2009.

The Distributor's Agreement provided, in relevant part, that "[t]his Agreement and all such rights and obligation may . . . be terminated by either party hereto at any time for any reason by giving of 60 days' written notice of such termination to the other party." Furthermore, the "Standard Provisions" of the Distributor's Agreement required Burger, upon termination of the Agreement, to return all materials bearing Overhead Door's mark; to discontinue the use of the name "Overhead Door" and "Overhead"; to deliver installation records of Overhead Door's products to Overhead; and to advise local telephone companies that the number used in connection with Overhead Door Company of Albany were to be retained by Overhead Door for future use.

On December 1, 2011, Overhead Door sent a written 60-day notice to Burger advising him the company opted to terminate the Distributor's Agreement. The notice requested that Burger comply with the "Standard Provisions" of their agreement. It specifically asked him to discontinue using the name "Overhead" and "Overhead Door," to advise the telephone company to transfer Overhead Door Company of Albany's numbers to Overhead Door, and to return all confidential data to Overhead Door's corporate office.

Burger now operates a company called Albany Door and Hardware and continues to use the telephone numbers listed in the Distributor's Agreement. He has refused to transfer the telephone numbers.

Burger's use of the telephone numbers has caused Overhead Door extensive damage in the Albany, Georgia area. Over the last thirty years, customers in the Albany area have associated those numbers with Overhead Door. Each garage door installed by Overhead Door generally comes with a label bearing the trademark and contact information for the company. Likewise, Overhead Door's invoices, business cards, and owner's manuals bear those numbers. As a result, Overhead Door has lost business and has experienced harm to its reputation and good will because customers who call the numbers on those materials or garage doors are directed to Burger's new business.

## DISCUSSION

### I. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990).  A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.  Once the movant has met its burden, the nonmoving party is

4

required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)). On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex Corp.*, 477 U.S. at 322–23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II.   Analysis**

    a. **Breach of Contract**

In order to establish a breach of a binding contract under Georgia law, a plaintiff has the burden of showing three elements: (1) the subject matter of the contract; (2) the consideration; and (3) mutual assent by all parties to all contract terms. *Roland v. Ford Motor Co.*, 288 Ga. App. 625, 629–30 (2007). Once the plaintiff proves the existence of a contract, he or she then must establish a breach and resultant damages. *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1996).

Overhead Door has established the elements of its breach of contract claim. The well-pleaded factual allegations and the record in this case show that Overhead Door and Burger entered into a valid contract authorizing Burger to distribute Overhead Door's products. Burger agreed to the contract terms by executing a Distributor's Agreement, which modified a previous contract to name him as the sole owner of Overhead Door Company of Albany. The facts also show that Burger breached the agreement by failing to return the phone numbers, as required by the Standard Provisions of the Distributor's Agreement.

      **b. Specific Performance**

      The Court further concludes that Overhead Door is entitled to specific performance of its contract. "Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance." O.C.G.A. § 23-2-130.

      Specific performance is appropriate in this context because damages will not adequately compensate Overhead Door. The evidence in this case establishes that customers in the Albany, Georgia area have associated Overhead Door with the numbers at issue in the Distributor's Agreement. Overhead Door printed these numbers on its owner's manuals, invoices, and garage doors. By using those numbers, Burger has diverted business from Overhead Door and has possibly tarnished the company's reputation and good will.

      For those reasons, the Court will order specific performance.

## CONCLUSION

      Overhead Door's Motion for Partial Summary Judgment is **GRANTED**. Within **fourteen (14) days** from entry of this Order, Burger is **ORDERED** to transfer the following numbers to Overhead Door: (229) 883-3578; (229) 883-7434; (229) 439-0062; and (800) 627-0350. Judgment shall be entered in favor of Overhead Door on the breach of contract claim.

      **SO ORDERED**, 27th day of March, 2014.

                                   /s/ W. Louis Sands
                          **W. LOUIS SANDS, JUDGE**
                          **UNITED STATES DISTRICT COURT**